IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE GRAY INSURANCE COMPANY,

        Plaintiff,

v.                                 Case No.:

WRP CONSTRUCTION, INC. and
WILSON R. PESANTEZ,

        Defendants.

_____/

## **COMPLAINT**

Plaintiff, The Gray Insurance Company ("Gray"), by and through its undersigned counsel, sues Defendants, WRP Construction, Inc. ("WRP") and Wilson R. Pesantez and alleges:

## **PARTIES, JURISDICTION, AND VENUE**

1.    This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiff and Defendants are citizens of diverse states.

2.    Gray is a Louisiana Corporation, which was incorporated in Louisiana, and maintains its principal place of business in Louisiana.  Gray is authorized to conduct business in Florida.

3.    Defendant, WRP, is a Florida Corporation, which was organized in Florida, and maintains its principal place of business in Davenport, Florida.

4.    Upon information and belief, Defendant Wilson R. Pesantez ("Pesantez") is a resident and citizen of Florida.

5.     The causes of action alleged herein fall within the jurisdictional limits of the Court because Gray seeks to recover more than $75,000.00 from the Defendants, exclusive of interest and costs.

6.     Venue is appropriate in this Court because one or more of the Defendants either reside in or have their principal place of business within the boundaries of the Middle District of Florida, and because the construction project that forms the basis of Gray's claims is located in Sarasota, Florida, within the Tampa Division of this Court.

## GENERAL ALLEGATIONS

7.     Gray is, among other things, a surety company that issues payment and performance bonds and stands as surety for selected contractors.

8.     At all pertinent times, WRP was a contractor on construction projects in Florida.  In connection with its work, WRP from time to time required surety payment and performance bonds.  To induce Gray to issue payment and performance bonds on its behalf, WRP and Pesantez executed a General Indemnity Agreement (the "Indemnity Agreement") dated April 10, 2019 in favor of Gray, attached hereto as **Exhibit "A."** (WRP and Pesantez are collectively referred to herein as the "Indemnitors.")

9.     The execution of the Indemnity Agreement, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to Gray issuing any bonds naming WRP as a principal.

10.     According to the Indemnity Agreement, the Indemnitors agreed, among other things, to:

2.      **Indemnity/Exoneration**:   The Indemnitors jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all Loss, liability, damages and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which the Surety may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with  any of the covenants and conditions of this Agreement, or the failure of the Indemnitors to discharge any obligations under this Agreement; (c) in enforcing any of the terms, covenants or conditions of this Agreement; or (d) in pursuing reimbursement for any Loss incurred hereunder.

Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. The amount of such payment to the Surety by the Indemnitors shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Indemnitors.

The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invert or to provide a return on the payment or any other collateral deposited with the Surety. The Indemnitors shall be entitled to the refund of any unused portion upon termination of the liability of the Surety on all Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by regular mail or certified mail or by facsimile transmission to the Indemnitors at the addresses of the Indemnitors last known to the Surety, regardless of whether such demand is actually received.

The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety the sum demanded by the Surety as payment, immediately upon demand, shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement, including the obligation to pay to the

3

Surety the sum demanded, and hereby waive any claims or defenses to the contrary.

In the event of payment of any kind by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity, or expediency existed. An itemized statement by an employee of such Surety, or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

11.     The Indemnitors further agreed to deposit collateral on demand by Gray as

follows:

**5.     Collateral Security:** On demand by Surety, the Indemnitors shall deposit collateral with Surety an amount Surety deems necessary to protect itself from all Loss or expenses as soon as Surety determines that liability exists or has reasonable basis to believe that it may incur liability, whether or not Surety has made any payment or created any reserve.  The collateral shall be cash or other property which Surety, in its sole and absolute discretion, may agree to accept.  Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or bonded Contract funds that Indemnitors diverted in violation of Paragraph 9 of this Agreement and/or to establish a trust account in accordance with Paragraph 9.  Surety shall have no duty to invest, or to provide interest on, any such deposit.  Surety shall have the right to use the collateral, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors are or would be obligated to indemnify Surety under the terms of this Agreement. The liability of the Principal and Indemnitors hereunder shall not be affected by the return or exchange of any collateral that may have been obtained.

Surety may release, sell or realize upon any or all such collateral security, at public or private sale, in its absolute discretion with or without notice to the Indemnitors, or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Indemnitors only for such surplus or remainder of such collateral security or the proceeds thereof as may be in Surety's possession after it has been fully indemnified and made whole under this Agreement, the common law, and all other agreements among

Surety and the Indemnitors.  Surety shall not be liable for decrease in value, release of, loss or destruction of, or damage to such collateral, however caused.

The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Surety, immediately upon demand, the sum demanded by Surety as collateral security shall cause irreparable harm to Surety for which Surety has no adequate remedy at law.  Therefore, the Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

12.    At the Indemnitors' request in consideration for their promise to comply with the terms of the Indemnity Agreement, Gray issued a Performance Bond and Payment Bond naming WRP as principal and Capstone CG, LLC ("Capstone") as obligee in connection with a subcontract for framing between WRP and Capstone (the "Subcontract") for certain work on an apartment construction project referred to as "P.O. No. 17002-010 Bergamot on 780" (the "Project").  A copy of the Bond is attached as **Exhibit "B."**

13.    Disputes arose between Capstone and WRP in connection with the Subcontract and the Project, and Capstone claimed that it incurred costs and damages as a result of WRP's failure to honor its obligations under the Subcontract.

14.    As a result, Capstone filed suit against WRP and Gray in the matter entitled *Capstone GC v. WRP Construction, Inc., et al.*, bearing Case number 2020 CA 003513 on the docket of the Twelfth Judicial Circuit in and for Sarasota County, Florida, and made demand against Gray under the Bond (the "Capstone Litigation").

15.    Gray incurred attorneys' fees and costs in investigating and defending the Capstone Litigation, including funding WRP's attorneys' fees and costs after WRP ceased funding those fees and costs.

16.    During the Capstone Litigation, by letter dated August 24, 2022, Gray demanded collateral from the Indemnitors.  The Indemnitors refused and/or failed to post collateral.  A copy of the collateral demand is attached as **Exhibit "C."**

17.    During the Capstone Litigation, Gray and Capstone (and other parties) reached a settlement whereby Gray paid to Capstone the sum of $75,000.00.

18.    The Indemnitors have failed to comply with their obligations to Gray.

19.    To date, Gray has also incurred attorneys' fees and costs in the amount of $77,802.32 in connection with the Capstone Litigation and in enforcing the Indemnitors' obligations under the Indemnity Agreement.

20.    Gray recovered the sum of $31,741.33 in connection with WRP's settlement with another party in connection with the Capstone Litigation.  Thus, Gray's total loss to date is $121,060.99.  Gray continues to incur attorneys' fees and costs in enforcing the Indemnitors' obligations under the Indemnity Agreement.

21.    The Indemnity Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and keep Gray indemnified "from and against any and all Loss," which includes attorneys' fees and consultants' fees, as a result of executing the Bond or because of the Indemnitors' failure to comply with the Indemnity Agreement.

22.     Gray has retained the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

23.     All conditions precedent to maintaining this action have either occurred, been excused, or otherwise been waived.

## COUNT I
### (Breach of Contract as to the Agreement / Contractual Indemnity)

24.     Gray realleges and incorporates the allegations in paragraphs 1 through 23 as if fully set forth herein.

25.     Pursuant to the Indemnity Agreement, and as further described above, the Indemnitors promised to indemnify and hold Gray harmless from all loss, liability, damages and expenses which Gray incurs or sustains because of having furnished the Bond, or because of the failure of an Indemnitor to discharge any obligations under the Agreement.

26.     Furthermore, the Indemnitors promised to indemnify and hold Gray harmless from any losses, liability, damages and expenses Gray incurs in enforcing any of the provisions of the Agreement, pursuing the collection of any loss incurred by Gray, investigating any claim submitted under the Bond, or any other expenses related to the defense of the Bonds.

27.     The Indemnitors, however, failed and refused to honor these obligations as set forth in the Indemnity Agreement.

28.     The Indemnitors have committed various breaches and defaults of the Indemnity Agreement including, but not limited to, failing and refusing to post collateral and indemnify Gray from its losses, including attorneys' fees and costs.

29.     As a result of the Indemnitors' breaches of the Indemnity Agreement, Gray has incurred damages and loss in the form of the payment to Capstone, attorneys' fees, and other costs.

30.     The Indemnitors have failed and/or refused to indemnify Gray.

31.     Gray is entitled to an award of its attorneys' fees and costs in pursuing this claim under the Indemnity Agreement.

WHEREFORE, Gray requests that this Court enter judgment against the Indemnitors, jointly and severally, for the payment to Capstone, all attorneys' fees and costs incurred in connection with the Capstone Litigation, all attorneys' fees and costs incurred in enforcing the Indemnitors' obligations under the Indemnity Agreement and interest, less its partial recovery set forth above, and such further relief as this Court deems just and proper.

Dated this 8th day of February, 2023.

/s/ *Alberta L. Adams*
Alberta L. Adams
PASKERT DIVERS THOMPSON
Fla. Bar No. 80063
Email: aadams@pdtlegal.com
100 North Tampa Street, Suite3700
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502

*Attorneys for The Gray Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 8, 2023, she caused a true and correct copy of the foregoing document to be served electronically on the parties registered to receive CM/ECF notification from the Court.

By: */s/ Alberta L. Adams*
*Attorney*