IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE GRAY INSURANCE COMPANY,

    Plaintiff,

v.                                               Case No.: 8:23-cv-00271-WFJ-AAS

WRP CONSTRUCTION, INC. and
WILSON R. PESANTEZ,

    Defendants.
_____/

**AMENDED MOTION FOR ENTRY OF FINAL JUDGMENT
AFTER DEFAULT AGAINST DEFENDANTS
<u>WRP CONSTRUCTION, INC. AND WILSON R. PESANTEZ</u>**

Plaintiff, The Gray Insurance Company ("Gray"), by and through its undersigned counsel, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, and Local Rule 1.10 of the Middle District of Florida, hereby files this Amended Motion for Entry of Final Judgment after Default against Defendants, WRP Construction, Inc., and Wilson R. Pesantez (sometimes collectively referred to as the "Indemnitors"), for their failure to serve or file any paper or pleading in this matter pursuant to the Court's Order dated March 30, 2023 (Doc. 15).

**I.**     **SUMMARY OF ARGUMENT**

Gray seeks final judgment after default against the Indemnitors resulting from substantial losses Gray has suffered as a result of issuing a Performance Bond and Payment Bond (the "Bond") to WRP Construction, Inc. ("WRP") for certain work on an apartment

construction project referred to as "P.O. No. 17002-010 Bergamot on 780" (the "Project"). Specifically, the Indemnitors' failures to honor their joint and several indemnity obligations to Gray pursuant to the General Indemnity Agreement (the "Indemnity Agreement") that Gray required the Indemnitors to execute as a prerequisite for issuing the Bond. Because the Indemnitors failed to serve or file any paper or pleading in this matter in response to Gray's Complaint, and because the Clerk has entered a default against them (D.E. 12, 13), Gray is entitled to default judgment for its losses incurred to date as a result of having issued the Bond pursuant to the clear and unambiguous terms of the Indemnity Agreement.

## II.     BACKGROUND

1.      Gray is, among other things, a surety company that issues performance and payment bonds on construction projects. *See* Affidavit of Kourtni Mason attached hereto as **Exhibit "A"** (the "Mason Affidavit") at ¶ 1.

2.      At all pertinent times, WRP was a contractor and, in connection with its work, required surety performance and payment bonds. *Id.* at ¶ 6.

3.      To induce Gray to issue the Bond on its behalf, the Indemnitors entered into an agreement, the Indemnity Agreement, with Gray wherein they agreed to exonerate, indemnify, and hold harmless Gray from loss incurred by reason of Gray having issued the Bond. *Id.* at ¶ 7.

4.      Specifically, in the Indemnity Agreement, the Indemnitors agree to, among other things:

> 2.      **Indemnity/Exoneration**:   The Indemnitors jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all Loss, liability, damages and expenses

of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which the Surety may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with any of the covenants and conditions of this Agreement, or the failure of the Indemnitors to discharge any obligations under this Agreement; (c) in enforcing any of the terms, covenants or conditions of this Agreement; or (d) in pursuing reimbursement for any Loss incurred hereunder.

Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. The amount of such payment to the Surety by the Indemnitors shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Indemnitors.

The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invert or to provide a return on the payment or any other collateral deposited with the Surety. The Indemnitors shall be entitled to the refund of any unused portion upon termination of the liability of the Surety on all Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by regular mail or certified mail or by facsimile transmission to the Indemnitors at the addresses of the Indemnitors last known to the Surety, regardless of whether such demand is actually received.

The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety the sum demanded by the Surety as payment, immediately upon demand, shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement, including the obligation to pay to the Surety the sum demanded, and hereby waive any claims or defenses to the contrary.

> In the event of payment of any kind by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity, or expediency existed. An itemized statement by an employee of such Surety, or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

Indemnity Agreement, at p.2, Paragraph 2 (a copy of the Indemnity Agreement is attached to the Mason Affidavit as **Exhibit "1"**). Pursuant to the Indemnity Agreement, the Indemnitors further agreed to deposit collateral on demand by Gray as follows:

> **5.    Collateral Security:** On demand by Surety, the Indemnitors shall deposit collateral with Surety an amount Surety deems necessary to protect itself from all Loss or expenses as soon as Surety determines that liability exists or has reasonable basis to believe that it may incur liability, whether or not Surety has made any payment or created any reserve. The collateral shall be cash or other property which Surety, in its sole and absolute discretion, may agree to accept. Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or bonded Contract funds that Indemnitors diverted in violation of Paragraph 9 of this Agreement and/or to establish a trust account in accordance with Paragraph 9. Surety shall have no duty to invest, or to provide interest on, any such deposit. Surety shall have the right to use the collateral, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors are or would be obligated to indemnify Surety under the terms of this Agreement. The liability of the Principal and Indemnitors hereunder shall not be affected by the return or exchange of any collateral that may have been obtained.
>
> Surety may release, sell or realize upon any or all such collateral security, at public or private sale, in its absolute discretion with or without notice to the Indemnitors, or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Indemnitors only for such surplus or remainder of such collateral security or the proceeds thereof as may be in Surety's possession after it has been fully indemnified and made whole under this Agreement, the common law, and all other agreements among Surety and the Indemnitors. Surety shall not be liable for decrease in value,

release of, loss or destruction of, or damage to such collateral, however caused.

The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Surety, immediately upon demand, the sum demanded by Surety as collateral security shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Therefore, the Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

5. The execution of the Indemnity Agreement, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to Gray issuing any bonds naming WRP as a principal. Mason Affidavit at ¶ 9.

6. At the Indemnitors' request in consideration for their promise to comply with the terms of the Indemnity Agreement, Gray issued a Performance Bond and Payment Bond (the "Bond") naming WRP as principal and Capstone CG, LLC ("Capstone") as obligee in connection with a subcontract for framing between WRP and Capstone (the "Subcontract") for certain work on an apartment construction project referred to as "P.O. No. 17002-010 Bergamot on 780" (the "Project"). A copy of the Bond is attached as **Exhibit "2"** to the Mason Affidavit.

7. Disputes arose between Capstone and WRP in connection with the Subcontract and the Project, and Capstone claimed that it incurred costs and damages as a result of WRP's failure to honor its obligations under the Subcontract. Mason Affidavit at ¶ 11.

8. As a result, Capstone filed suit against WRP and Gray in the matter entitled *Capstone GC v. WRP Construction, Inc., et al.*, bearing Case number 2020 CA 003513 on

the docket of the Twelfth Judicial Circuit in and for Sarasota County, Florida, and made demand against Gray under the Bond (the "Capstone Litigation"). *Id.* at ¶ 12.

9. Gray incurred attorneys' fees and costs in investigating and defending the Capstone Litigation, including funding WRP's attorneys' fees and costs at WRP's request and to avoid a default being entered as to WRP after WRP ceased funding those fees and costs. *Id.* at ¶ 13.

10. During the Capstone Litigation, by letter dated August 24, 2022, Gray demanded collateral from the Indemnitors. The Indemnitors refused and/or failed to post collateral. *Id.* at ¶ 14. A copy of the collateral demand is attached to the Mason Affidavit as **Exhibit "3."**

11. During the Capstone Litigation, Gray and Capstone (and other parties) reached a settlement whereby Gray paid to Capstone the sum of $75,000.00. Gray issued payment to Capstone on December 16, 2022. Mason Affidavit at ¶ 15; letter to Capstone dated December 16, 2022 enclosing check, attached to the Mason Affidavit as **Exhibit "4."**

12. The Indemnitors have failed to comply with their obligations to Gray. Mason Affidavit at ¶ 16.

1. To date, Gray has also incurred attorneys' fees and costs in the amount of $84,765.12 in connection with the Capstone Litigation and in enforcing the Indemnitors' obligations under the Indemnity Agreement. The breakdown of fees and costs is as follows:

   a. Jill Berman (Mediator's fee for Gray and WRP):   $ 2,910.00
      (Mason Affidavit at **Exhibit "5"**)

|   |   |   |
|---|---|---|
| b. | Hayes & Newman (WRP's counsel):<br>(Fee statements attached to the Mason Affidavit as composite **Exhibit "6"** and checks showing payments from Gray as composite **Exhibit "7"**) | $42,796.12 |
| c. | Paskert Divers Thompson (Gray's counsel)[1]: | <u>$36,140.00</u> |
|   | ***TOTAL:*** | $84,756.12 |

*Id.* at ¶ 17.

13.     Gray recovered the sum of $31,741.33 in connection with WRP's settlement with another party in connection with the Capstone Litigation, which it has applied to reduce its attorneys' fees and costs to $53,014.79. Thus, Gray's total loss to date is $128,014.79. Gray continues to incur attorneys' fees and costs in enforcing the Indemnitors' obligations under the Indemnity Agreement. *Id.* at ¶ 19.

14.     Detail regarding the fees and costs incurred by Gray and the reasonableness of same is provided in the Mason Affidavit (Exhibit "A") and the Adams Affidavit (Exhibit "B").

15.     The Indemnity Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and keep Gray indemnified "from and against any and all Loss," which includes attorneys' fees and consultants' fees, as a result of executing the Bond or because of the Indemnitors' failure to comply with the Indemnity Agreement.

16.     Gray has retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered. *Id.* at ¶ 20.

---

[1] Paskert Divers Thompson's fee statements are attached the to Affidavit of Alberta Adams (the "Adams Affidavit"), counsel for Gray, attached hereto as **Exhibit "B".**

## III  ARGUMENT

### A.  Liability

As this Court has held, "[t]he effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. *Whole Space Industries, Ltd. v. Gulfcoast Intern. Products, Inc.*, 2009 WL 2151309, *3 (M.D. Fla. 2009). Gray properly alleged all elements of the cause of action, breach of contract, alleged in the Complaint, pursuant to Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F. 3d 913, 914 (11th Cir. 1999) citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992).

Gray has properly pled its claim for breach of contract in the Complaint. First, Gray alleged that the Indemnitors signed the Indemnity Agreement and attached a copy of the Indemnity Agreement as Exhibit "A" to the Complaint. (D.E. 1 at ¶ 8). Second, Gray pled that the Indemnitors breached the Indemnity Agreement. (D.E. 1 at ¶ 28). Among other things, Gray alleged that: (1) the Indemnitors agreed to indemnify Gray from any liability for losses and expenses (D.E. 1 at ¶¶ 10, 25); (2) Gray issued the Bond naming WRP as principal after the Indemnitors signed the Indemnity Agreement (D.E. 1 at ¶¶ 12); (3) Gray received a claim against the Bond from the obligee, Capstone (D.E. 1 ¶¶ 13, 14); and (4) Gray demanded that the Indemnitors comply with their indemnity obligations to reimburse Gray, but the Indemnitors failed to comply. (D.E. 1 at ¶¶ 16, 18, 27, 28). Finally, Gray pled that it incurred damages as a result of the Indemnitors' failure to comply with the terms of the Indemnity Agreement. (D.E. 1 at ¶ 17, 19, 20, 29.)

8

Gray has also provided an affidavit from its Surety Claims Counsel, Kourtni Mason, attesting to the accuracy of the factual allegations in the Complaint, the basis for the Indemnitors' liability to Gray, and Gray's damages which is attached hereto and incorporated herein by reference as Exhibit "A." Consequently, taking Gray's factual allegations as true, the Indemnitors are liable to Gray for breach of contract as to the Indemnity Agreement.

B. **Damages**

Although a default admits the factual allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default; rather, the Court determines the amount and character of damages to be awarded." *Whole Space*, supra, at *3. As quoted above, the Indemnitors agreed to:

> [E]xonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all Loss, liability, damages and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which the Surety may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with any of the covenants and conditions of this Agreement, or the failure of the Indemnitors to discharge any obligations under this Agreement; (c) in enforcing any of the terms, covenants or conditions of this Agreement; or (d) in pursuing reimbursement for any Loss incurred hereunder.

17. Gray has attached Ms. Mason's Affidavit in support of its damages to this motion. As the Mason Affidavit indicates, Gray has incurred losses net of recovery totaling $128,014.79 as a result of issuing the Bond on behalf of WRP. Mason Affidavit, ¶ 18. Specifically, Gray has paid Capstone $75,000.00 under the Bond, and incurred attorneys'

fees and costs in the net amount of $53,014.79 (calculated based on total attorneys' fees and costs of $84,756.12 less $31,741.33 in recovery) in connection with the Capstone litigation and in enforcing the Indemnitors' obligations under the Indemnity Agreement. Gray has also provided detail regarding the fees and costs incurred (including fee statements), and the reasonableness of those fees in the Mason Affidavit and the Adams Affidavit.

An itemized statement of the amount of the payments sworn to by an authorized representative of Gray are included in the Mason Affidavit. *See* Mason Affidavit, ¶¶ 15, 17. Under Section 2 of the Indemnity Agreement, "[a]n itemized statement by an employee of such Surety, or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety." Accordingly, Gray seeks a judgment for its damages in the amount of $128,014.79.

Gray is further entitled to interest on its loss at the "maximum rate permitted by law, from the date such payments are made." In Florida, the maximum rate of interest permitted by law is 18% (eighteen percent). *See* Section 687.02, Florida Statutes. For ease of calculation, Gray is claiming interest as follows:

1. At the rate of 18% per annum on the $75,000.00 payment to Capstone from December 16, 2022, to the date of entry of Judgment; and

2. At the rate of 18% per annum on its net attorneys' fees and costs in the amount of $50,470.99 ($82,212.32 in total fees and costs less the $31,741.33 recovered by Gray as discussed above) from the date of the filing of the Complaint, February 8, 2023, to the date of entry of Judgment.

10

## IV. CONCLUSION

Gray respectfully requests that the Court enter judgment in favor of Gray and against the Indemnitors in the amount of $128,014.79, plus pre-judgment interest as follows:

    1.    At the rate of 18% per annum on the $75,000.00 payment to Capstone from December 16, 2022, to the date of entry of Judgment; and

    2.    At the rate of 18% per annum on its net attorneys' fees and costs in the amount of $53,014.79 from the date of the filing of the Complaint, February 8, 2023, to the date of entry of Judgment.

Gray further respectfully requests an award of post-judgment interest at the federal rate from the date of the entry of judgment until it is paid in full, and for such other legal and equitable relief to which it may be entitled.

Respectfully submitted,

/s/ *Alberta L. Adams*
Alberta L. Adams
PASKERT DIVERS THOMPSON
Fla. Bar No. 80063
Email: aadams@pdtlegal.com
100 North Tampa Street, Suite 3700
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorneys for The Gray Insurance Company*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 11, 2023, she caused a true and correct copy of the foregoing document to be served electronically on the parties registered to receive CM/ECF notification from the Court. A true and correct copy of the foregoing was also served by certified mail/return receipt requested:

| | |
|---|---|
| WRP Construction Inc.<br>2180 Central Florida Parkway, Suite A2<br>Orlando, FL  32837 | Wilson R. Pesantez<br>1717 Ronald Reagan Parkway<br>Davenport, FL  33896 |

By: */s/ Alberta L. Adams*
      *Attorney*